# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIZIO ANTONINETTI; JEAN RIKER; JAMES PERKINS; KAREN FRIEDMAN; MICHAEL RIFKIN; SUSAN CHANDLER; and LAURA WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Colorado corporation; and DOES 1-10,<br><br>Defendants. | Case No. 06cv02671 BTM (WMc)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS, APPOINTMENT OF CLASS REPRESENTATIVES AND APPOINTMENT OF CLASS COUNSEL** |

Pending before the Court is Plaintiffs' "Motion to Certify Class, Appointment of Class Representatives and Appointment of Class Counsel" (Doc. 88). For the reasons set forth herein, the Court DENIES Plaintiffs' motion.

## **BACKGROUND**

The named plaintiffs ("Plaintiffs") are individuals who use wheelchairs or other devices for mobility, and who are patrons of the well-known chain of restaurants owned by Defendant Chipotle Mexican Grill, Inc. ("Chipotle"). Chipotle's employees prepare its Mexican-inspired fare at a food preparation area located behind a service counter, within the view of customers

standing in a food service line. Chipotle refers to the opportunity for customers standing in line to see the food offered for sale, and to witness the preparation of their meals according to their specifications, as the "Chipotle experience." Plaintiffs allege that at certain times between 2003 and the present, customers who use wheelchairs have been unable to participate equally in the "Chipotle experience," because service counter walls higher than 36 inches ("high counter walls") at restaurants throughout California blocked their view of the food preparation area.

Plaintiffs bring class action claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and California's Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code § 51 *et seq.* Plaintiffs seek injunctive relief requiring Chipotle to lower the counter walls and/or maintain lowered walls, minimum statutory damages of $4,000 for each offense, pursuant to California Civil Code § 52, and declaratory relief.

## DISCUSSION

Plaintiffs move for class certification of the following class under Federal Rule of Civil Procedure 23:

> All persons with mobility disabilities who use wheelchairs or other mobility aides, such as scooters, and who, because of their mobility impairments, have been or will be denied their rights under the ADA and state law to full and equal access to the goods, services, benefits, advantages, privileges and accommodations provided by Chipotle, at its restaurants within the State of California, because of approximately 45-inch high walls at the food preparation areas at any time from December 3, 2003 to the present.

(Pl. Br. at 9 (Doc. 88-1).) Plaintiffs request that the Court appoint named plaintiffs Maurizio Antoninetti, James Perkins, Karen Friedman, Michael Rifkin, Susan Chandler, and Laura Williams as class representatives, and Amy B. Vandeveld and Thomas J. Vandeveld III as class counsel. (Id.)

Rule 23 requires the party seeking class certification to establish each of the four requirements of Rule 23(a), and to show that the proposed class falls within one of the three provisions of Rule 23(b). The Court addresses, as a preliminary matter, Defendant's

argument that Plaintiffs' claim for injunctive relief is moot, before proceeding to the class certification analysis.

**a.     Defendant's mootness challenge**

Defendant argues that Plaintiffs' putative class claim for injunctive relief is moot because the high counter walls no longer remain in any Chipotle restaurants in California. Based on the record, the Court agrees.

"A claim is moot if it has lost its character as a present, live controversy." United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 698 (9th Cir. 1984) (citation omitted). Accordingly,

> [i]f an ADA "plaintiff has already received everything to which he would be entitled, i.e., the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that this plaintiff will again be subjected to the same wrongful conduct by this defendant."

Rush v. Denco Enterprises, Inc., --- F. Supp. 2d ---, 2012 WL 1423584, at *3 (C.D. Cal. Apr. 23, 2012) (citing Parr v. L & L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1087 (D. Hawai'i 2000) (internal quotations and citation omitted)).

Defendant supports its claims that "none of Chipotle's California restaurants have walls higher than 36 inches" (Opp. Br. at 3) with the Declaration of Scott L. Shippey, Manager of Sustainable Design for Chipotle Mexican Grill, Inc. (Doc. 128-10). Mr. Shippey states that, beginning in 2007, Chipotle implemented a design plan for its restaurants pursuant to which the height of the restaurants' counter walls would be set at "a little less than 36 inches high, so that the height of the new Wall would be in line with the adjacent point of sale counter where customers pay at the register." (Shippey Decl. ¶ 2.)  Mr. Shippey also states that, as of June 30, 2011, "[a]ll Chipotle restaurants in California have the new 36-inch high wall in front of the food preparation counter" (id. ¶ 5), and that "Chipotle has no plans to return to using the old Wall design and no plans ever to use a wall more than 36 inches high in front of the food preparation counter" (id. ¶ 6).

Defendant further cites to the depositions of several of Plaintiffs' witnesses for the proposition that Plaintiffs cannot establish the presence of a high counter wall in any California restaurant after 2009. (Opp. Br. at 5-7.) In reply, Plaintiffs fail to cite any part of the record indicating that high counter walls have existed at any Chipotle restaurant in California since 2009. Because it is undisputed that Defendant has remedied the architectural barrier at issue in this litigation, Plaintiff's claim for injunctive relief is moot.

The Court notes that Plaintiffs' failure to establish the present existence of high counter walls at any Chipotle in California, or any likelihood that a putative class member would encounter a high wall in the future, also renders Plaintiffs unable to establish numerosity with regard to their putative class claim for injunctive relief.

Plaintiffs' argue that the "voluntary cessation" exception to the mootness doctrine applies here because, absent declaratory and injunctive relief, Defendant is free to reconstruct high counter walls after the resolution of this litigation. Under the voluntary cessation exception, a defendant's voluntary cessation of a wrongful activity will moot a claim for an injunction against that activity *only if* "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Barnes v. Healy, 980 F.2d 572, 580 (9th Cir. 1992) (citations omitted).

Given the facts of this case, Plaintiff's claim to the voluntary cessation exception lacks merit. First, Defendant has already incurred *significant* litigation expenses as a result of its high counter walls. See Antoninetti v. Chipotle Mexican Grill, Inc., No. 05cv01660, 2012 WL 2923310, at *7 (S.D. Cal. Jul. 17, 2012) (entering final judgment against Chipotle in amount of $550,079.05, constituting statutory damages under California's Disabled Persons Act, costs, and fees, based on finding that high walls violated ADA). Second, the Ninth Circuit has already specifically held, in a separate action between one of the named plaintiffs in this case and Chipotle (the "individual case"), that the high counter walls are noncompliant with the ADA Guidelines. See Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1172 (9th Cir. 2010) (citing 28 C.F.R. § 36, App. A, § 7.2(2)) (holding that high counter walls failed

to comply with § 7.2 of the ADA Guidelines—requiring that service counters 36 inches or more in length not exceed 36 inches in height). Third, the undisputed evidence in this case shows that Defendant has remedied previously existing high counter walls and installed low counter walls at all newly constructed restaurants. Under these circumstances, the notion that Defendant would invest the time and money to reconstruct its high counter walls at some future date—simply because, as Plaintiffs assert, it still thinks it can—is insufficient to constitute a live controversy. See Independent Living Resources v. Oregon Arena Corp, 982 F. Supp. 698, 774 (D. Or. 1997) (finding that injunctive relief claims were moot because "[t]he likelihood that—after the conditions have been brought into compliance—plaintiffs will again be subjected to these same (alleged) violations appears to be rather low. That is particularly true of structural modifications, which are unlikely to be altered in the future."); see also Grove v. De La Cruz, 407 F. Supp. 2d 1126, 1130-31 (C.D. Cal. 2005) (dismissing plaintiff's ADA claims predicated on alleged architectural barriers that had been physically corrected as moot); Parr, 96 F. Supp. 2d at 1087 (same).

Plaintiffs argue that even if the putative class claim for an injunction is moot, the "claims for *declaratory relief* are not moot because Chipotle continues to insist that its Walls do not violate the ADA and it is not required by the ADA to maintain its Walls at the lower level." (Rep. Br. at 2 (emphasis in original).) This argument ignores, however, the fact that Chipotle already litigated and lost its argument that the high counter walls comply with the ADA Guidelines. See Antoninetti, 643 F.3d at 1172  Chipotle is collaterally estopped from re-litigating this issue. See Appling v. State Farm Mut. Auto Ins. Co., 340 F.3d 769, 775 (9th Cir. 2003) (approving application of offensive nonmutual collateral estoppel "where (1) the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine, (2) the issue was actually litigated in the first case, and (3) the issue was necessarily decided in the first case."). Accordingly, Plaintiffs' claim for a declaratory judgment on this ground is moot as well.

//

For all the reasons set forth above, the Court finds that Plaintiffs' putative class claims for injunctive relief and corresponding declaratory relief (i.e., a declaratory judgment stating that the high counter walls constitute a per se violation of the ADA Guidelines) are moot, and denies class certification of those claims.

Although Plaintiffs' ADA claims are the only causes of action over which the Court has original jurisdiction, the denial of class certification on those claims does not present a jurisdictional problem, for two reasons. First, the Court has not, at this time, dismissed the ADA claims outright. Second, to the extent the Court's mootness determination divests the Court of jurisdiction over the ADA claims, the Court retains supplemental jurisdiction over Plaintiffs' claims under the Unruh Act. There is no question that the Court had supplemental jurisdiction over Plaintiffs' state law damages claims at the inception of this lawsuit, since the damages claims "are so related to [Plaintiffs' ADA claims] that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The Court's decision "whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-40 (2009); 28 U.S.C. § 1367(c). In exercising this discretion, the Court "consider[s] and weigh[s] . . . the values of judicial economy, convenience, fairness, and comity[.]" Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). Since this case was filed nearly six years ago and was subject to a lengthy stay, and the Court has substantial familiarity with the facts, the dismissal of the Unruh Act claims would not serve judicial economy, and these claims shall remain within the Court's supplemental jurisdiction—regardless of the disposition of the ADA claims. Having already found supplemental jurisdiction over the Unruh Act claims in this action, the Court does not reach Plaintiffs' claim for jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

//
//
//
//

**b.     Rule 23 requirements**

The Court declines to address the four requirements of Rule 23(a), because even if Plaintiff can satisfy all four, Plaintiff cannot show that class certification is appropriate under Rule 23(b).  Plaintiffs seek certification of the class under Rule 23(b)(2), or, in the alternative, under Rule 23(b)(3).  Since Plaintiffs' claims for injunctive relief and corresponding declaratory relief are moot, and Rule 23(b)(2) applies only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that *final injunctive relief or corresponding declaratory relief* is appropriate respecting the class as a whole," the Court cannot certify the class under Rule 23(b)(2).  Fed. R. Civ. P. 23(b)(2) (emphasis added); see also Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 131 S.Ct. 2541, 2557 (2011) (Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages").

Rule 23(b)(3) permits certification where "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).

1.     Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues."  Hanlon, 150 F.3d at 1022 (internal quotation marks and citation omitted).  "When *common questions represent a significant aspect of the case* and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."  Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1778 (emphasis added).  The "main concern in the predominance inquiry[ is] the balance between individual

and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953, 959 (9th Cir. 2009).

The common legal issue with respect to the damages claim is whether the high counter walls violate the ADA as applied to a particular wheelchair-bound patron, where that patron was seeking to have the "Chipotle experience" and the walls blocked the patron's view of the food preparation area. As with the issue of whether the high counter walls themselves comply with the ADA Guidelines, Chipotle has already litigated and lost this issue in the individual case, wherein the Ninth Circuit held in clear terms:

> The violations of the [ADA] we have found are that, because of the wall, Antoninetti was unable to see the food arranged on the food counter or the preparation of his order, as non-wheelchair-bound customers could do, and thus was unable to enjoy the "Chipotle experience."

Antoninetti, 643 F.3d at 1177. On remand, this Court entered judgment against Chipotle based on Chipotle's violation of the ADA. See Antoninetti v. Chipotle Mexican Grill, Inc., No. 05cv01660, "Order re Ninth Circuit Mandate and Opinion" (S.D. Cal. Nov. 29, 2010). Plaintiffs do not need to litigate this common legal issue as a class, since Chipotle is collaterally estopped from re-litigating this issue. See Appling, 340 F.3d at 775. Thus, the legal question common to all putative class members no longer "represent[s] a significant aspect of the case."

In this vein, the Court notes that, to the extent Plaintiffs seek a declaration regarding the standard for ADA liability under the circumstances alleged, such declaratory relief is unnecessary in light of the Ninth Circuit's holding. Moreover, the Court must address the liability standard in order to resolve Plaintiffs' damages claims, and therefore declaratory relief as to that standard is redundant. See Concorde Equity II, LLC v. Miller, 732 F. Supp. 2d 990, 1003 (N.D. Cal. 2010); Chan v. Chancelor, No. 09cv1839, 2011 WL 5914263, at *6 (N.D. Cal. Nov. 28, 2011) ("All of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose.").

Going forward, it is the individual issues that will predominate. In the individual case, the Ninth Circuit held that the plaintiff was not entitled to statutory minimum damages under

California's disability statutes[1] on account of the walls themselves; rather, the plaintiff was entitled to damages only upon a showing that "he actually presented himself to the restaurant on a particular occasion, as any other customer would do, with the intent of being . . . served and to purchase food . . . . [and] actually encountered access to the . . . restaurant that was not full and equal." Id. (citing Reycraft v. Lee, 177 Cal. App. 4th 1211, 1226 (4th Dist. 2009)) (alterations in original). In other words, each putative class member in the present case must establish at least one "particular occasion" on which he or she was "seeking to purchase food or to have the 'Chipotle experience[,]'" "sat in line in his [or her] wheelchair[,]" and was "unable to see the food arranged on the food counter or the preparation of his order, as non-wheelchair-bound customers could do, and thus was unable to enjoy the 'Chipotle experience.'" Id. at 1177.

This is a fact-intensive inquiry. It requires each class member to establish which Chipotle restaurant he visited, when he visited it, and whether he traveled the food service line—all as to each particular occasion for which that class member seeks damages. Moreover, the mere fact that an individual in the food service line used a wheelchair for mobility does not mean that the high counter walls necessarily blocked that individual's view of the food preparation area. See Doc. 128-5, Barnett Decl., ¶ 5 (stating that declarant was able to see Chipotle's food preparation area while seated in wheelchair despite presence of high counter walls at time of visit); Doc. 128-6, Carrion Decl., ¶ 5 (same); Doc. 128-9, Sylvia

---

[1] The Antoninetti decision addressed statutory minimum damages under the California Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54 et seq. In the present case, Plaintiffs seek statutory minimum damages under the Unruh Act.

Regardless, the California Civil Code and the cases applying it impose the same "particular occasion" standard on statutory damages claims under both the CDPA and the Unruh Act. See Cal. Civ. Code § 55.56(a) ("Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a construction-related accessibility claim against a place of public accommodation only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion."); Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1177 (9th Cir. 2010) (holding that in order to maintain an action for damages pursuant to the CDPA, "an individual must establish that he or she was denied equal access on a particular occasion." (citations, alterations and quotation marks omitted)); Botosan v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir. 2000) ("[I]n order to maintain an action for damages under the Unruh Civil Rights Act, an individual must take the additional step of establishing that he or she was denied access on a particular occasion." (citation and quotation marks omitted)).

Decl., ¶ 5 (same). Accordingly, for each particular occasion, the class member must establish that he was actually unable to see his food prepared, which in turn will require at least proof of how high the counter wall was at the time of the visit (Plaintiffs have alleged only that the high counter walls were "approximately" 46 inches high (FAC ¶2)), and how high the class member sat in his wheelchair at the relevant time.

In sum, the common legal issue in this case has already been resolved, and each putative class member's entitlement to damages hinges on factual determinations requiring individualized proof. Even if some of the factual issues could be resolved on a class-wide basis (e.g., if Plaintiffs could establish that all high counter walls were the exact same height), the issues requiring individualized proof would still predominate. See Moeller v. Taco Bell Corp., No. C. 02-5849, 2012 WL 3070863, at *5 (N.D. Cal. July 26, 2012) (denying class certification of Unruh Act claims against Taco Bell because calculating class damages would require many individualized determinations as to each statutory damages claim, and would not "be a simple matter of adding up the number of times each class member was aggrieved by noncompliant barriers").

    *ii.  Superiority*

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed.2005). Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of the litigation as a class action is efficient and whether it is fair. Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168, 1175-76 (9th Cir. 2010). The Ninth Circuit has also advised that "the Rule 23(b)(3) superiority analysis must be consistent with the congressional intent in enacting a particular statutory damages provision." Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 716 (9th Cir. 2010).

//

Based on the discussion in the previous subsection, the Court sees no advantage with respect to judicial economy in certifying the issue of whether putative class members are entitled to statutory damages under the Unruh Act. Nor does the Court find that the availability of a class action is necessary to enforce the Unruh Act in this context. The Unruh Act allows minimum statutory damages in the amount of $4,000 *for each particular occasion,* providing individuals with a significant monetary incentive to file individual lawsuits. Moreover, attorneys' fees and costs are available for parties prevailing on their Unruh Act claims. See Cal. Civ. Code § 52(a). That these incentives spur successful disability access litigation in California is exemplified in the individual case, in which the plaintiff, Mr. Antoninetti, received $5,000 in statutory damages, and Ms. Vandeveld received $484,240.00 in attorneys' fees. Accordingly, the Court finds that a class action would not be superior to other available methods for fairly and efficiently adjudicating this controversy, and declines to certify a damages class.

## **CONCLUSION**

For the reasons set forth above, the Court hereby DENIES without prejudice Plaintiffs' motion for class certification. The Court grants Plaintiffs leave to re-file a motion for class certification if, upon further discovery, Plaintiffs can establish that their claims for injunctive relief and corresponding declaratory relief are not moot.

**IT IS SO ORDERED.**

Dated: August 28, 2012

**HONORABLE BARRY TED MOSKOWITZ**
United States District Judge