**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAURIZIO ANTONINETTI, JEAN RIKER, JAMES PERKINS, KAREN FRIEDMAN JAY RIFKIN, SUSAN CHANDLER, LAURA WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiff,<br><br>     v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation, and DOES 1 – 10, Inclusive,<br><br>                                    Defendants. | Case No. 06-CV-02671-BTM-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES & COSTS** |

On December 2, 2013, Plaintiffs filed a motion seeking attorneys' fees and costs of $1,671,197.27, plus fees incurred in litigating this motion.  (Docs. 183, 207.) For the reasons set forth below, Plaintiffs' motion for attorneys' fees and costs is hereby **GRANTED in part and DENIED in part**.

# I. BACKGROUND

The parties are familiar with the facts of the case.[1]  Due to the unique procedural posture of this motion, however, it bears noting that:

1. Maurizio Antoninetti filed a lawsuit against Defendant in August 2005. Antoninetti v. Chipotle Mexican Grill, Inc., No. 05-cv-1660.  In that case, Mr. Antoninetti alleged injury arising from visits to two of Defendant's restaurants whose serving area layout violated the Americans With Disabilities Act ("ADA") as well as California's disability access laws.

2. This case was filed on December 6, 2006, as a six-count class action alleging the same facts. Antoninetti et. al. v. Chipotle Mexican Grill, Inc., No. 06-cv-2671.  Discovery in the two pending cases proceeded jointly.

3. On May 7, 2008, in the Central District of California, a second class action was filed by plaintiffs residing outside of this district who were represented by the same counsel as those litigating here: Perkins et. al. v. Chipotle Mexican Grill, Inc., No. 08-cv-3002.  The Compliant and Second Amended Complaint similarly alleged violations of the ADA as well as California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq.

4. After granting partial summary judgment and holding a bench trial, Mr.

---

[1] For a factual summary, see Antoninetti v. Chipotle Mexican Grill, 643 F.3d 1165, 1169-71 (9th Cir. 2010).  See also "Order re Plaintiff's Motions for Summary Judgment and for Attorneys' Fees," No. 05-1660, March 21, 2012 (Doc. 359.); "Order on Attorneys' Fees," No. 05-1660, July 17, 2012 (Doc. 377) (awarding $545,079.05 in fees and costs); "Order Denying Class Certification," No. 06-2671, August 28, 2012 (Doc. 145).

Antoninetti prevailed in part in the individual action, but was not granted injunctive relief because the Court found that Chipotle's "Customers With Disabilities Policy," as amended in 2007, brought it into compliance with the ADA.

5. Mr. Antoninetti appealed that judgment.  Both putative class actions were stayed pending the appeal.  On July 26, 2010, Mr. Antoninetti prevailed, and the Ninth Circuit Court of Appeals remanded the case with instructions "to enter a judgment that Chipotle violated the Disabilities Act and to issue appropriate injunctive relief."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1177 (9th Cir. 2010).

6. The stay of the *Antoninetti* putative class action was lifted on August 28, 2010.  The stay in the *Perkins* case remained in place until a settlement was reached.

7. Mr. Antoninetti died on May 9, 2011.  The Court granted Mrs. Antoninetti's unopposed motion to substitute as the plaintiff in this case.

8. Class certification was denied.  The parties thereafter negotiated a global settlement of the individual claims in this class action, in the Perkins class action, and in fifteen additional individual suits, all of which were consolidated before this Court.  More specifically, the individual plaintiffs in state court cases were added to the *Antoninetti* class action, and the *Perkins* case was transferred and consolidated with *Antoninetti* on December 3, 2013.  (Order Consolidating Cases, No. 06-2671, December 3, 2013 (Doc. 187).)

9. Under the global settlement agreement, Chipotle Mexican Grill, Inc.

06-CV-02671

("Chipotle" or "Defendant") agreed to pay Plaintiffs' reasonable attorneys' fees and costs in all of these related cases. (Doc. 182, Ex. A ¶¶ 2.1.C.1, 2.1.C.6.)

10. As of July 2011, none of the Chipotle locations in California had the type of wall that formed the basis for these suits.

11. The twenty-one named plaintiffs collectively recovered $225,000 in damages for their individual claims.

12. On July 17, 2012, the Court amended a prior judgment in the invidivual *Antoninetti* case, awarding $545,079.05 in attorneys fees and costs. (No. 05-cv-1660, Doc. 377.) That amount accounted for time and expenses spent litigating the individual *Antoninetti* case, including time spent opposing certiorari to the Supreme Court, and time spent on remand through the date of the award. On December 26, 2012, the plaintiff was awarded an additional $353,469.95 for fees and costs related to proceedings before the Ninth Circuit. (No. 05-cv-1660, Doc. 382.) Thus, counsel has already been awarded $898,549 in fees and expenses related to these cases.

13. The pending motion addresses only heretofore uncompensated fees and costs for work on the putative class actions pursuant to the settlement agreement.

//

//

//

//

//

06-CV-02671

## II.  **LEGAL STANDARDS**

Under 42 U.S.C. § 12205, the "prevailing party" in an Americans with Disabilities Act ("ADA") action may, in the Court's discretion, recover "reasonable attorney's fees, including litigation expenses, and costs."  See also 28 C.F.R. § 36.505.  The prevailing plaintiff is also entitled to fees and costs under California's applicable disability access laws.  See Cal. Civ. Code §§ 52(a).  The amount of the prevailing party's reasonable attorneys' fees is calculated using the lodestar method. Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008).  Under the lodestar method, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Hours that are excessive, redundant, or otherwise unnecessary should be excluded from an award of fees.  Id. at 434; Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008).  To calculate the "lodestar," the court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable rate.  Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). The hourly rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel."  Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001). "The burden is on the plaintiff to produce evidence that the requested rates are in line

with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." Id. (internal quotations omitted).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in

the community, and rate determinations in other cases, particularly those setting a

rate for the attorney, are satisfactory evidence of the prevailing market rate." United

Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Generally, the relevant community "is the forum in which the district court sits."

Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  The relevant rates in that

community are those charged "for similar services by lawyers of reasonably

comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895

n.11 (1984).  "The defendant may introduce rebuttal evidence in support of a lower

hourly rate."  Sorenson, 239 F.3d at 1145.  As to the number of hours reasonably

expended, a fee applicant "should make a good-faith effort to exclude . . . hours that

are excessive, redundant, or otherwise  unnecessary."  Hensley, 461 U.S. at 434.  The

movant bears the burden of submitting detailed time records justifying the hours

claimed to have been expended.  Id. at 437; In re Washington Public Power Supply

Sys. Secs. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994).

There is a strong presumption that the lodestar figure represents a reasonable

fee award.  Harris v Marhoefer, 24 F.3d 16, 18 (9th Cir. 1994); United Steelworkers,

896 F.2d at 407 (holding that, absent competent rebuttal evidence or a finding that

counsels' rates are unwarranted by their level of performance, the requested rates are

presumed reasonable); <u>Stonebrae L.P. v. Toll Bros.</u>, 521 Fed. Appx. 592, 595 (9th Cir. 2013) ("Where, as here, a party achieves an excellent result, the court should refuse to reduce the lodestar amount.").  Yet courts may adjust the lodestar figure upward or downward based upon the factors enunciated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975):  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  See Camacho, 523 F.3d at 978; Cunningham v. Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988) (same).  See also Woods v. Sunn, 865 F.2d 982, 991 (9th Cir. 1988) (noting that many factors previously identified by courts as probative on the issue of reasonableness of a fee award are now subsumed within the initial calculation of the lodestar amount); Morales, 96 F.3d at 363-64.  Generally, the most important factor is the degree of success obtained.  Farrar v. Hobby, 506 U.S. 103, 115-16 (1992).  Finally, the Court may make across-the-board percentage cuts in the number of hours claimed as "a practical means of trimming the fat from a fee application."  <u>Gates v. Deukmejian</u>, 977 F.2d 1300, 1307 (9th Cir. 1992) (citation omitted).

# III. DISCUSSION

## A.   Evidentiary Issues

To call the record with respect to this motion voluminous would be an understatement.  Plaintiffs' motion is accompanied by ten supporting declarations and a request for judicial notice.  Defendant's opposition is supported by two declarations and is accompanied by 75 objections to Plaintiffs' evidence as well as opposition to Plaintiffs' requests for judicial notice.  (Doc. 189.)  Plaintiffs have filed objections to each of Defendant's declarations as well.  (Docs. 192-4, 192-5.) Defendant's objections to Plaintiff's supporting declarations (Docs. 189-9 to 189-15) prompted over a dozen separate replies from Plaintiffs (Docs. 192-207).  As a preliminary matter, the Court addresses these requests and objections.

### 1. *Requests for Judicial Notice & Objections to Expert Declarations*

Plaintiffs ask the Court to take notice, pursuant to Rule 201(b) of the Federal Rules of Evidence, of seven exhibits consisting of documents filed in the related individual action, Antoninetti v. Chipotle Mexican Grill, Inc., No. 05-cv-1660.  (Doc. 183-6.)  Rule 201 provides an avenue for the Court to take judicial notice of reasonably indisputable adjudicative facts.  It is not typically a mechanism for acknowledging the content of filings in other proceedings, however.  M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential

06-CV-02671

to support a contention in a cause then before it."). The Court therefore takes notice that the individual *Antoninetti* proceeding exists and that these documents are filed in the docket of that case (No. 05-cv-1660-BTM-WVC). See generally U.S. ex rel Robinson Rahcheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have direct relation to matters at issue.'"); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998); Recent Past Pres. Network v. Latschar, 701 F. Supp. 2d 49, 55 (D.D.C. 2010).

Plaintiffs' request encompasses three "expert declarations" of Richard Pearl. (Doc. 183, Exs. 4, 5, 6.) As Defendant points out, the Court cannot consider the substance of the declarations as evidence by taking judicial notice of their filing in another case. Baker v. Cal. Dep't of Corrections, 484 F. App'x 130, 132 (9th Cir. 2012). Rule 702 provides the proper avenue for the admission of such declarations.[2] For example, in Stonebrae, L.P. v. Toll Bros., No. 08-221, 2011 U.S. Dist. LEXIS 39832, 9-12 (N.D. Cal. Apr. 7, 2011), a case wherein Mr. Pearl provided an expert declaration (and references here), his declaration was admitted as expert testimony

---

[2] Under Rule 702, a witness qualified as an expert in "scientific" knowledge may testify thereto if: "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In response to an objection, the Court conducts a preliminary assessment to ensure, in essence, that the expert's analysis amounts to "good science." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593 (1993)); Kennedy v. Collagen Corp., 161 F.3d 1226, 1228 (9th Cir. 1998).

06-CV-02671

under Rule 702.  Although Defendant objects to the relevancy of some data Mr. Pearl

relies upon, the Court finds, based in part upon Plaintiffs' response (Doc. 193-1), that

Mr. Pearl's declarations satisfy the threshold requirements.  See generally Levi

Strauss v. Abercrombie & Fitch Trading Co., 2008 U.S. Dist. LEXIS 87625, *22

(N.D. Cal. Oct. 16, 2008) (noting that, so long as the data are reliable,

methodological deficiencies go to "the weight to be accorded the survey, rather than

its admissibility.") (citing Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir.

1997)).  The Court likewise finds that the Declaration of William M. Hensley

("Hensley Decl.") satisfies Rule 702 and overrules Plaintiffs' general objections

thereto (Doc. 192-5 at 1-3).

     2.  *Objections to Timekeeper & Billing Records*

     Defendant objects, *inter alia*, to Exhibits 13, 14, 15, and 16 to the Declaration

of Amy B. Vandeveld (Doc. 185) ("Vandeveld Decl.").  Ms. Vandeveld asserts that

Exhibit 13 evidences costs and litigation expenses incurred in the individual actions

as well as the class actions, and that she advanced these costs.  (Vandeveld Decl.

¶45.)  She states that Exhibit 14 is "[m]y billing statement for the *Antoninetti class*

*action . . . .  To the best of my knowledge, the billing statement accurately reflects

the time I invested, and the costs and expenses incurred, in that case." (Id. ¶46.)  So

too with Exhibit 15 (*Perkins* class action) and Exhibit 16 (*Antoninetti* individual

cases).  (Id. ¶¶47, 48.)  Finally, Plaintiffs' attorneys state that their billing records are

based upon "contemporaneously kept timesheets."  (Amy Vandeveld Reply Decl.,

06-CV-02671

Doc. 192-2 at 33; Thomas Vandeveld Reply Decl. ¶3., Doc. 192-1.)  The Court finds

that these statements, paired with the affirmation under penalty of perjury, are

sufficient to satisfy the personal knowledge and authentication requirements of Rules

602 and 901, and overrules the objections.  The hearsay objections are also

overruled, as deficiencies in the movants' filings were cured by their reply

declarations such that the billing records fall within the business records exception to

the hearsay rule.  See Davis v. City of San Francisco, 976 F.2d 1536, 1542 (9th Cir.

1992); New Eng. Tech., Inc. v. Sigma Tech Sales, Inc., 2010 U.S. Dist. LEXIS

111102 (S.D. Fla. 2010).

3.  *Remaining Objections*

The parties raise numerous other objections based on rules 402, 403, 602, 802,

901, and 1002 of the Federal Rules of Evidence.  The parties identify no real

prejudice as to admissibility, nor do they cite any authority sustaining, e.g., a Rule

403 objection in the context of a motion for fees and costs.  The Court overrules the

objections to Mr. Pearl's declarations as well as Mr. Hensley's declaration because

an expert witness may rely upon otherwise inadmissible evidence as a basis for an

expert opinion if it is reasonable for an expert in the field to do so.  See Fed. R. Evid.

703; see also Fed. R. Evid. 1004.  The Court need not expressly reach the remaining

objections because they pertain to materials it does not rely upon in reaching its

decision.  Cf. SEC v. Pattison, No. 08-4238, 2011 U.S. Dist. LEXIS 22398 (N.D.

Cal. Feb. 22, 2011) (declining to exercise discretion to strike, "since the declaration

is not completely devoid of relevant factual statements, the undersigned is capable of parsing through it, and the SEC has not identified any prejudice.").

## B.    Reasonable Hourly Rate

Plaintiffs' award request is based upon hourly rates of $525 and $620 for Mr. and Ms. Vandeveld, respectively.  The Court specifically addressed the proper hourly rate for Ms. Vandeveld in its July 17, 2012 Order in the individual *Antoninetti* case, finding $400 to be an appropriate rate.  (No. 05-1660, Doc. 377 at 10-11.)  The Court factored in her expertise and success on appeal, and included an upward adjustment for the contingency nature of the fee and the extended litigation period.  Due to the overlapping work and substantial similarity between the parties, the claims, and the attorneys involved—each is virtually identical at all relevant times—the Court adopts its prior analysis here.[3]  The Court finds the same hourly rate is reasonable for Mr. Vandeveld.

The Court finds insufficient evidence that there was an intervening change in the local prevailing rate for disability litigation services (aside from an increase attributable to inflation) during the relevant period.  The Court will, however, adjust the recoverable rate to account for inflation.  Mr. Pearl and Mr. Hensley agree that there has been an increase, apparently attributable to inflation, in hourly rates.  See

---

[3] As Plaintiffs emphasize, the Ninth Circuit awarded the requested rate of $475-$500/hr for the same attorneys involved in the appeal of the individual *Antoninetti* case. There, however, Defendant failed to introduce rebuttal evidence as to the requested rates, depriving the panel of the benefit of Mr. Hensley's affidavit. (No. 05-1660, Doc. 382 at 14.)  With respect to the pending motion, by contrast, Mr. Hensley's opinion is properly before the Court.

Hensley Decl. ¶¶10, 13, 14B, 18 (opining that the prevailing local hourly rate for ADA work is in the range of $375 to $425).  The Court will increase the awarded rate by five percent.  This bump is based upon Mr. Pearl's estimate of a 5.1% increase in 2011.  (Pearl Decl., Ex. B).  The Court will accordingly calculate the lodestar using hourly rates of $420 for Plaintiffs' counsel.  The Court finds that Plaintiffs' requested rated of $125 per hour for time spent on tasks typically performed by a paralegal to be reasonable.

## C.   Time

During the time period at issue, the parties engaged in negotiations and motion practice before this Court.  Plaintiffs' counsel also identified and reached out to the named plaintiffs.  Plaintiffs submit declarations of Amy Vandeveld ("A.V. Decl."), lead counsel, and Thomas Vandeveld ("T.V. Decl.") as evidence of the time worked on this case and costs incurred.  (Doc. 184.)  Defendants submit the declaration of their lead counsel, David R. Sugden ("Sugden Decl."), and the declaration of their expert, William M. Hensley ("Hensley Decl."), in opposition to Plaintiffs' request.

Plaintiffs' counsel seeks compensation for 2,033.2 hours of work—494.4 expended by Thomas Vandeveld, and 1,538.8 by Amy Vandeveld.  (T.V. Decl., Ex. 8; A.V. Decl., Exs. 14-16; T.V. Supp. Decl., Ex. 1.)  Defendant accuses Plaintiffs' counsel of treating this case as a "cash cow," "milking it" for fees.  See generally Jones v. Dominion Res. Servs., Inc., 601 F. Supp. 2d 756, 759 (S.D.W.Va. 2009) ("[W]hen the lodestar method is applied, class counsel has an incentive to

"over-litigate" or draw out cases in an effort to increase the number of hours used to calculate their fees.").  The Court may apply an across-the-board "haircut" to "trim the fat" where, as here, the requested award is excessive.  <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008) (a "district court can impose a small reduction, no greater than 10 percent — a "haircut" — based on its exercise of discretion and without a more specific explanation").  Defendant, however, asks the Court to apply much deeper cuts.  Specifically, Mr. Hensley contends that the Court should strike 75% of that time (before applying a further 60% reduction) due to, e.g., needless litigation, duplicative billing, excessive research time, insufficient supporting records, and inefficiency.  (<u>See, e.g.,</u> Hensley Decl. ¶30.)  Mindful of these arguments as well as the unusual procedural posture and parallel litigation across three cases here, the Court turns to the record.

    1.  *Unreasonable or Unnecessary Litigation*

The parties vigorously dispute whether time was reasonably spent litigating the terms of injunctive relief after the Ninth Circuit mandate in the individual *Antoninetti* case.  The parties argued this point before the Court on November 16, 2010, and the Court expressed skepticism as to Plaintiffs' purported need to secure an admission of liability and declaratory relief.  (Sugden Decl., Ex. A 18:19-21, 21:8-9, 23:21-24, 24:4-11.)  On January 13, 2011, Defendant's counsel confirmed that Chipotle's Encinitas and Pacific Beach locations had lowered their walls in January 2009.  (Sugden Decl., Ex. R.)  Mr. Sugden also proposed a stipulated injunction,

14

though it was not entirely clear what the scope of that proposal was at the time.  On July 3, 2012, the parties again argued the point before the Court at a hearing on fees in the individual *Antoninetii* case.  (Sugden Decl., Ex. B 50-55.)

Plaintiffs moved for class certification on April 18, 2011, arguing that a statewide class was appropriate.  (Doc. 88.)  On August 28, 2012, the Court denied that motion, finding that the claim for injunctive relief was moot (even after considering the voluntary cessation exception) in light of the Ninth Circuit ruling, the failure to establish the presence of a high counter wall in any California Chipotle since 2009, and Defendant's evidence that no Chipotle in the state had counter walls over 36 inches.  (Doc. 145.)  The Court also rejected Plaintiffs' argument that their claims for declaratory relief were not moot, because Chipotle had been held in violation of the ADA by the Ninth Circuit and was collaterally estopped from re-litigating the issue.  (Id. at 5.)

Defendant avers that Plaintiffs' counsel knew that the offending condition at the Pacific Beach and Encinitas restaurants had been remedied by July 2010, when the Ninth Circuit remanded the individual *Antoninetti* case with instructions to enter an injunction.  (Opp'n at 6-7.)  For this reason, Defendant argues that the Court should disallow recovery for time spent after July 2010.  It appears that Defendant's counsel informed Ms. Vandeveld of the remedial actions on August 9, 2010.  (A.V. Decl. ¶¶28, 38.)  Defendant has also shown that, by January 2011, each representative plaintiff in the class actions had seen for themselves that the walls at

been lowered at the restaurants they had visited.  (Opp'n 7-8.)

Yet Plaintiffs' counsel had more work to do on the putative class actions following remand of the individual *Antoninetti* case.  As Plaintiffs point out, the scope of Defendant's remedial actions was uncertain or unconfirmed through early 2011.  And in addition to negotiating a settlement as to damages, Plaintiffs' counsel had to confirm that the offending condition was remedied at the relevant locations, and was unlikely to recur, before accepting a stipulated settlement and dropping the case.  The Court will accordingly exclude hours for time wasted litigating these issues, but not going all the way back to July 2010.  Rather, it will credit reasonable time spent pursuing class certification, declaratory relief, and injunctive relief through January 18, 2011,[4] when it should have been clear that further pursuit of injunctive relief and class certification was fruitless because Defendant had confirmed relief as to two locations at issue as of that time.  Although Defendant did not provide confirmation as to all of its California restaurants at that time, the Court is skeptical of the time spent belaboring these points thereafter.

Upon review of the billing statements, the Court finds that, with the partial exception of time spent on class certification issues, there is no clear way to reliably parse out different claims or litigation activities, e.g., pursuit of injunctive or declaratory relief as opposed to damages.  The billing records indicate that Ms.

---

[4] The email from Defendant's counsel concerning the remedial measures was sent on January 13, 2011, and Ms. Vandeveld's invoice reflects that she reviewed the attached document on January 18, 2011.

06-CV-02671

Vandeveld spent over 242 hours on class certification issues (and a related motion for reconsideration) separate and apart from other work for the individual plaintiffs (this figure does not include time spent on discovery, depositions, or preparing declarations). Some 194.8 of those hours were spent working on class certification issues between January 18, 2011 and January 14, 2013. Mr. Vandeveld also spent at least 91.4 hours just on class certification issues, 62.4 of which were between January 18, 2011 and June 21, 2013.

Mr. Hensley suggests that the Court exclude 179.1 hours of Mr. Vandeveld's time and 228.1 hours of Ms. Vandeveld's time for unnecessary work or excessive time generally, and with respect to class certification in particular. (See Hensley Decl. ¶¶28E, 30D.) Upon review of the billing records, the Court agrees in part with Mr. Henley's recommendation and finds it appropriate to exclude time on that basis. More specifically, the Court finds that time spent on class certification after January 18, 2011 was excessive and unnecessary. The Court accordingly excludes the following time spent on class certification from the lodestar: 194.8 of Ms. Vandeveld's hours and 62.4 of Mr. Vandeveld's hours. The Court finds the remaining time (approximately 77 hours) spent on class certification to be reasonable and includes it in the lodestar.

2. *Fees on Fees*

Reasonable fees and costs associated with the pursuit of attorneys' fees are generally recoverable. McGrath v. County of Nevada, 67 F.3d 248, 253 (9th Cir.

1995).  Plaintiffs request compensation for over 265 hours spent on the pending motion.  Mr. Vandeveld's billing report reflects some 59.6 hours spent on the motion, including preparing the moving papers.  In a supplemental declaration, Mr. Vandeveld states that he spent an additional 75.5 hours responding to hundreds of pages filed in opposition to the motion.  (T.V. Supp. Decl. (Doc. 207) ¶2.)  Ms. Vandeveld billed 132 hours at a paralegal rate of $125 per hour for time spent preparing papers, e.g., billing records, related to the pending motion.  Relying on the opinion of Mr. Hensley, Chipotle argues that this amount of time is unreasonable because, e.g., previous fees motions could have been used as templates.

Even factoring in the need to respond to objections, this amount of time is beyond the pale, especially at Mr. Vandeveld's rate.  See Doran v. Disability Rights Enforcement Educ. Servs., 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005) (reducing award for time spent on fee application where "many of the[] same tasks could have been achieved by referring to previous cases").  Ms. Vandeveld billed at least 125.8 paralegal hours preparing billing statements from September to November 2013. This involved transferring information from timesheets into billing software and "cross-checking files to ensure all time was captured."  (A.V. Reply Decl. at 33, Doc. 192-2.)  The Court finds much of this work to be duplicative and inefficient, and therefore deducts 35.1 hours from Mr. Vandeveld's bills and 72 hours from Ms. Vandeveld's bill, limiting recovery for time related to the motion *sub judice* to 100 attorney hours and 60 paralegal hours.  The Court believes this provides proper

compensation while minimizing the incentive to dwell on a fee motion.  See generally Cruz v. Starbucks Corp., 2013 U.S. Dist. LEXIS 79231, 2013 WL 2447862, *8 (N.D. Cal. June 5, 2013) (applying a 50% reduction to time spent on fee motion); Hernandez v. Grullense, 2014 U.S. Dist. LEXIS 61020, 2014 WL 1724356, *13-14 (N.D. Cal. Apr. 30, 2014) (applying a reduction of over 60% to time spent preparing a fee motion); Rodriguez v. Barrita, Inc., 2014 U.S. Dist. LEXIS 90021, *25 (N.D. Cal. July 1, 2014) (limiting recovery for fees on fees in disability access case to 98.5 combined attorney and paralegal hours).

3. *Duplicative and Excessive Billing*

Counsel should exercise billing judgment in a good faith effort to exclude unnecessary time from a fee application.  Hensley, 431 U.S. at 437.  See also Rosenfeld v. United States DOJ, 903 F. Supp. 2d 859, 877 (N.D. Cal. 2012). Defendant argues that much of the time billed by Plaintiffs' counsel is duplicative or excessive, and that Plaintiffs' billing records do not indicate any reduction for inefficiency, waste, or duplication of effort.  (Some, but not all, of the billing entries Defendant complains of have already been addressed by the Court's striking of unreasonable time spent on class certification, *supra*.)  For example, Mr. Hensley opines, and the Court agrees, that Ms. Vandeveld billed 24.9 hours in 2010 on work related to jurisdiction over *Perkins* that was duplicative of work performed in the *Antoninetti* class action.  (A.V. Decl. Ex. 15, 9-11; Hensley Decl. 38-39, ¶30D.) //

### 4. *Excessive & Inadequately Documented Conferencing*

Defendant contends that Plaintiffs' billing records reflect an excessive amount of conferencing between Plaintiffs' counsel as well as with potential witnesses. (Hensley Decl. ¶28C.)  The Court agrees that the following entries in Mr. Vandeveld's bill are excessive or inadequately explained: (1) .7 hours on August 20, 2010, (2) .4 hours on August 26, 2010 for an uncorroborated call with Ms. Vandeveld, (3) 2.2 hours spent traveling to meet and meeting with Ms. Vandeveld on October 1, 2010, which are uncorroborated by her billing entries for that day, and (4) 1.2 hours on February 1, 2013 as excessive and uncorroborated.  The Court strikes (5) 1.8 hours from Mr. Vandeveld's bill for October 1, 2010 for time spent traveling to and attending what was recorded in Ms. Vandeveld's invoice as a 24 minute meeting.

### 5. *Administrative/Clerical/Paralegal Tasks*

Defendant argues that Plaintiffs' counsel overbills for time spent providing notice to putative class members.  (See, e.g., Hensley Decl. ¶30H.)  Some time spent preparing and distributing notices does appear to be excessive, and there is no indication that Plaintiffs' counsel applied billing judgment to reduce their fees in any way.  The Court will accordingly adjust the rate for 98.9 hours Amy Vandeveld spent contacting, corresponding with, or gathering basic information from potential witnesses and class members by assigning that time a paralegal rate of $125 per hour. See generally Davis v. City of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992),

*vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) ("It is simply not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."). The Court will also adjust 17.3 hours spent communicating notice in July 2013 to the same paralegal rate. An appendix correlating these adjustments to the billing records is appended hereto.

**D.    Discretionary Reduction**

Each side accuses the other of dragging out settlement negotiations. Mr. Hensley also suggests that virtually all of the time Ms. Vandeveld spent on the case from September 6, 2012 to November 1, 2013 was unnecessary. (See Doc. 189-3 at 164-171.) The Court declines to exclude settlement activities from the lodestar beyond the adjustments made to time spent drafting materials or providing notice. The Court credits most of Plaintiffs' time spent negotiating a settlement and satisfying notice requirements.

After applying these exclusions, the lodestar amounts to 1,461.5 attorney hours and 176.2 paralegal hours. A discretionary reduction to the lodestar is one way to address remaining shortcomings in the billing records, e.g., vague timekeeper entries that make it difficult to discern how much time was spent needlessly. See In re Smith, 586 F.3d 1169, 1174 (9th Cir. 2009) ("[T]he district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of trimming the fat from a fee application.") (citation omitted); Rosenfeld v. United States DOJ, 903 F. Supp. 2d 859, 877 (N.D. Cal. 2012). To the

extent Defendant requests that the Court apply a further reduction on that basis, the Court declines to do so.

**E.     Lodestar Calculation**

### TABLE 1: HOURLY RATES

| Timekeeper | Hourly Rate Billed | Hourly Rate Awarded |
|---|---|---|
| Amy Vandeveld | $620 | $420 |
| Thomas Vandeveld | $525 | $420 |
| Paralegal | $125 | $125 |

### TABLE 2: TIME

| Timekeeper | Time Billed | Reasonable Time |
|---|---|---|
| Amy Vandeveld (attorney rate) | 1,406.8 hours | 1,070.9 hours |
| Thomas Vandeveld | 494.4 hours | 390.6 hours |
| Paralegal | 132 hours | 176.2 hours |

### TABLE 3: LODESTAR

| | Reasonable Hours | Reasonable Hourly Rate | Lodestar |
|---|---|---|---|
| Amy Vandeveld | 1,070.9 | $420 | $449,778 |
| Thomas Vandeveld | 390.6 | $420 | $164,052 |
| Paralegal | 176.2 | $125 | $22,025 |

**LODESTAR**                                                            **$ 635,855**

06-CV-02671

### F.   <u>Adjustment to Lodestar</u>

The Court next considers the *Kerr* factors to determine whether an adjustment to the lodestar is appropriate.[5]  Several factors have already been considered in calculating the lodestar, including the requisite skill for this type of legal service, the contingent nature of the fee, the customary fee charged in this region for this type of service, the experience and skill of Plaintiffs' counsel, and awards in similar cases. These factors are not reconsidered in adjusting the lodestar.  <u>Hensley</u>, 461 U.S. at 436-37.  The parties have not suggested that there was a relevant time constraint imposed by the clients or the circumstances of the case.  The Court accordingly focuses herein on the remaining factors: the amounts involved and the results obtained.

### 1. *Plaintiffs' Request for an Upward Multiplier*

California's Unruh Civil Rights Act provides for a lodestar "multiplier" where the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the lodestar to approximate the fair market rate for the services provided.  <u>See</u> <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001).  Although the Plaintiff undertook the risk and expense of litigating on a contingent basis over an extended period, the Court has already accounted for that factor in its calculation of the attorneys' reasonable rate.  (<u>See</u> No. 05-1660, Doc. 377 at 10-11, Order

---

[5] Defendant does not argue that class certification, injunctive relief, or declaratory judgment constitute unrelated claims here, and the Court does not treat those failed pursuits as unrelated, unsuccessful claims. <u>See</u> <u>Supler v. Fkaacs, Inc.</u>, No. 11-cv-229, 2013 U.S. Dist. LEXIS 178101, *15-16 (W.D.N.C. Dec. 19, 2013).

enhancing hourly rate from $375 to $400 "because of the contingency nature of the fee and the extended length of the litigation.")  The Court finds no basis for finding that the representation of the individuals in the *Perkins* action presented "rare and exceptional" factors warranting a further enhancement under California law since it resulted in a relatively modest settlement in relation to the time expended and because the success of the individual claims was not legally or procedurally complicated in light of the Ninth Circuit ruling in *Antoninetti*.  See Fisher v. SJB-P.D. Inc., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).

Plaintiffs urge the Court to multiply the loadstar by a factor  of 1.5, "which reflects the time involved, the risk involved, and the outstanding success obtained." (Mot. at 9.)  According to Plaintiffs, the additional cases formed a catalyst or motivating factor that substantially contributed to Chipotle's policy change and adjustment of wall heights statewide.  Due to the timing of the Ninth Circuit ruling as well as Chipotle's policy change and elimination of the offending counter walls, the Court disagrees.  To qualify under a "catalyst" theory, Plaintiffs must establish that their lawsuits (1) motivated the defendant to provide the primary relief sought, and (2) had merit and "achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense." Tipton-Whittingham v. City of Los Angeles, 34 Cal. 4th 604, 608 (2004).

The Court acknowledges that Plaintiffs successfully obtained $10,000 in damages for each individual defendant.  Beyond that, the Court rejects Plaintiffs'

argument.  Plaintiffs have not demonstrated that the class litigation had a synergystic effect that yielded better results for the plaintiffs, or any additional nonmonetary relief at all.  By their own admission, Plaintiffs' counsel made a tactical decision that enabled them to test the waters with the individual case while the putative class actions were stayed.  (See, e.g., Sugden Decl., Ex. B 36:24-37:2 (July 3, 2012 Hr'g Tr.) ("And the other thing . . . that was really important in [the individual *Antoninetti*] case was the declaratory relief that the plaintiff obtained because that will have an impact in the class action case . . . .")  Plaintiffs' counsel was so successful that they not only reduced the risks associated with class litigation, they effectively eliminated the need for it.  Mr. Antoninetti's win effectively secured the relief sought by the putative class members.  If Plaintiffs' counsel had not already been compensated for that feat, the situation would be different.  But they have been, and the Court accordingly finds that an enhancement is unwarranted.  On this record, any other ruling would countenance double-dipping.

## 2. *Defendant's Request for a Downward Multiplier*

The court should reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 439-40.  In considering the extent of the relief obtained, the court "compare[s] the amount of damages sought to the amount awarded." Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005).  Chipotle asks the Court to reduce the lodestar by 60% based on limited success.  With respect to the degree of success, the Court considers

06-CV-02671

"the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended . . . ." <u>McCown v. City of Fontana</u>, 565 F.3d 1097, 1103 (9th Cir. 2009). In evaluating the degree of success, the Court may consider, but is not limited to, the following factors: the amount and nature of claims the Plaintiff prevailed on compared to those that were dismissed, the amount of damages awarded compared to the amount sought, the amount of damages awarded relative to the amount of attorney's fees sought, and whether the suit conferred a benefit on the public. <u>See</u> <u>id.</u> at 1104-05; <u>McGinnis v. Kentucky Fried Chicken of California</u>, 51 F.3d 805, 810 (9th Cir. 1994). Determining an appropriate reduction of the fee request is not a scientific matter. <u>Skaff v. Le Meridien</u>, 2008 U.S. Dist. LEXIS 123537, *31-32 (C.D. Cal. Aug. 29, 2008). "Rather, it is a calculation based on experience and good sense in light of the factual record." <u>Id.</u> <u>See also</u> <u>Schwarz v. Sec'y of Health & Human Servs.</u>, 73 F.3d 895, 904-05 (9th Cir. Or. 1995) (affirming 75% reduction of time based on the success of only one of four claims); <u>Harris v. Marhoefer</u>, 24 F3d 16, 17 (9th Cir. 1994) (affirming 50% reduction based on the number of successful versus unsuccessful claims). For the reasons outlined below, the Court finds that Plaintiffs' success was limited in relation to the time expended.

Plaintiffs' initial complaint alleged six counts, including a consumer protection claim and tort claims that were dropped in 2011. Consequently, the settlement, as relevant here, is based on the remaining two counts: the ADA and Unruh Act claims. Plaintiffs sought monetary relief for the named plaintiffs as well as a class of persons

similarly situated that was estimated to be some 393,000 Californians (allowing for repeat customers). (Pls.' Mot. for Class Cert. at 11, Doc. 88-1.) As mentioned *supra*, the Court denied class certification on those claims. Although Plaintiffs' counsel secured an excellent monetary award with respect to each individual plaintiff, the plaintiffs here enjoy no nonmonetary benefit that they did not have following the Ninth Circuit ruling in the individual *Antoninetti* case. See Betancourt v. Giuliani, 325 F. Supp. 2d 330, 330-31, 335 (S.D.N.Y. 2004) (reducing plaintiff's attorney fee award where his civil rights class action failed to obtain much relief sought, including the certification of a class).

While the *Antoninetti* litigation conferred a benefit on the public, that benefit arose principally from the work leading to the Ninth Circuit ruling, not from this case. There has been no such nonmonetary success in the cases relevant here. The Court accordingly finds that the putative class actions were only partly successful. Plaintiffs' request for fees amounting to over seven times the amount of relief obtained is thus unwarranted.

In *Antoninetti*, this Court entered a 25% reduction based upon the failure of plaintiff's claim for damages arising from litigation-related visits. (No. 05-1660, Doc. 377 at 6 n.4.) Here, the results are also mixed—the damages claims successfully resulted in $10,000 payouts totaling $225,000, but Plaintiffs dropped their tort claims in 2011, and their the pursuit of declaratory relief, class certification, and an injunction failed. Thus, the work performed by Plaintiffs' counsel in the

putative class actions failed to obtain relief for any putative class members beyond those individually named.  Because Plaintiffs could have achieved the same result without their post-remand pursuit of class certification, injunctive relief, and a declaratory judgment, a large amount of time spent on the case at issue here was not "reasonably necessary to obtain the relief that was ultimately obtained." Rodriguez, 2014 U.S. Dist. LEXIS 90021, *40 (quoting Velez v. Wynne, 220 F. App'x 512, 513 (9th Cir. 2007)).  For these reasons, the lodestar is excessive relative to the success achieved by these plaintiffs, even after striking the excessive time spent on class certification.  The Court therefore applies a fifty percent reduction to the lodestar and will enter a total fee award of **$317,927.50.[6]** See Supler, 2013 U.S. Dist. LEXIS 178101, *15-16 (reducing award by 50% where "the individual plaintiff enjoyed a good deal of success [but] the proposed class did not"); Dodson v. Dollar Tree Stores, Inc., 2006 U.S. Dist. LEXIS 90416, 12-14 (E.D. Cal. Dec. 13, 2006) (reducing fee award "by 3/7, or forty three percent, to account for [the plaintiff's] limited success" where he prevailed on four of seven claims "[b]ecause it is impossible to apportion attorneys' fees between the unsuccessful claims from the

---

[6] In calculating this reduction, the Court is mindful to avoid double-cutting. See Cabrales v. Cnty. of Los Angeles, 864 F.2d 1454, 1465 (9th Cir. 1988) ("Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success.  What matters is that the district court did not 'count' for lack of success twice.").  An adjustment is appropriate at both stages of the analysis here because the billing records present reasonably clear criteria for striking unreasonable time with respect to class certification (257.2 of over 333 hours) from the lodestar, but not as to the unsuccessful pursuit of other claims, injunctive relief, or declaratory relief.

successful claims with any degree of certainty").  See also Coyne v. Reliance Std.

Life Ins. Co., 2003 U.S. Dist. LEXIS 26696 (C.D. Cal. Dec. 16, 2003) (applying a

50% reduction for limited success); Zook v. Brown, 865 F.2d 887, 896 (7th Cir.

1989) (reducing number of hours by 75% for "limited results").  This amounts to

over 140% of the $225,000 obtained for Plaintiffs.  This adjustment thus reflects that,

while counsel achieved excellent results for each individual client, a great deal of

time spent litigating the case was out of proportion to the ultimate result and not

reasonably necessary to obtain that result.  See Velez, 220 F. App'x at 512;

Rodriguez, 2014 U.S. Dist. LEXIS 90021, *44.

### G.    Bill of Costs

Plaintiffs' request an award of litigation expenses and costs in the amount of

$19,824.77.  That request is supported by expense reports accompanying the

declarations of Plaintiffs' counsel.  Defendant does not oppose this request.  The

Court accordingly finds the requested amount to be adequately documented and

reasonable under the circumstances.

### IV.  CONCLUSION

The Court has carefully considered Plaintiffs' motion for attorneys' fees and

costs in light of the *Kerr* factors, including the time required, the novelty and

difficulty of the questions involved, and the results obtained.  Having done so, the

motion is hereby **GRANTED in part and DENIED in part**.  It is accordingly

**ORDERED** that Plaintiffs are awarded attorneys' fees and costs totaling

**$337,752.27**.  This award includes $317,927.50 in attorneys' fees and $19,824.77 in costs.  The Clerk of Court shall enter judgment (as to fees, costs, and expenses) for Plaintiffs in the amount of **$337,752.27**.  As no issues remain, the Clerk shall close the docket of this case.

     **IT IS SO ORDERED.**

Dated: September 29, 2014

BARRY TED MOSKOWITZ
Chief United States District Judge

06-CV-02671

# APPENDIX

| Paralegal Work | Hours |
|---|---|
| Page 49 | 0.1 |
| Page 49 | 0.5 |
| Page 49 | 0.1 |
| Page 53 | 4.2 |
| Page 53 | 3.2 |
| Page 54 | 0.2 |
| Page 54 | 2.1 |
| Page 54 | 0.5 |
| Page 54 | 3.2 |
| Page 54 | 6.8 |
| Page 54 | 5.2 |
| Page 54 | 5.3 |
| Page 54 | 1.8 |
| Page 54 | 1.5 |
| Page 54 | 1.6 |
| Page 55 | 2.4 |
| Page 55 | 0.8 |
| Page 55 | 4.5 |
| Page 56 | 0.5 |
| Page 56 | 3.8 |
| Page 56 | 1 |
| Page 57 | 2.7 |
| Page 57 | 4.3 |
| Page 58 | 2.1 |
| Page 58 | 0.5 |
| Page 58 | 2.1 |
| Page 58 | 1.4 |
| Page 59 | 1.2 |
| Page 59 | 1 |
| Page 59 | 1.2 |
| Page 63 | 0.7 |
| Page 63 | 0.8 |
| Page 65 | 0.5 |
| Page 65 | 0.3 |
| Page 65 | 0.7 |
| Page 65 | 0.4 |
| Page 65 | 0.5 |
| Page 65 | 0.4 |
| Page 65 | 0.5 |
| Page 65 | 0.5 |
| Page 65 | 0.2 |
| Page 65 | 0.1 |
| Page 65 | 0.4 |
| Page 80 | 2.5 |
| Page 93 | 0.5 |
| Page 93 | 0.3 |
| Page 93 | 7.4 |
| Page 93 | 1.8 |
| Page 94 | 0.2 |
| Page 94 | 0.6 |
| Page 94 | 0.1 |
| Page 138 | 6.5 |
| Page 139 | 10.8 |
| Page 167 | 9.1 |
| Page 156 | 0.3 |
| Page 170 | 1 |
| Page 171 | 3.3 |
| **Total** | **116.2** |